**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Robert Arnold VIK,
Defendant–Appellant.**

**No. 15720.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 7, 1989.

Motion for Rehearing or to Transfer
to Supreme Court Denied
Feb. 28, 1989.

Application to Transfer Denied
April 18, 1989.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Thomas E. Klinginsmith, Carthage, for defendant-appellant.

GREENE, Judge.

Robert Arnold Vik was jury-convicted of the crime of selling marijuana, a controlled substance, in violation of § 195.020.1, RSMo 1986, and, after a finding that he was a prior offender, was sentenced by the trial court to 30 years' imprisonment as punishment for the crime.

On appeal, Vik contends that (1) there was insufficient evidence to support the conviction, (2) the state failed to lay a proper foundation for the admission into evidence of a bag of marijuana which was allegedly sold on December 2, 1986, by Vik to an undercover police officer, (3) the trial court erred in refusing to grant a mistrial, (4) the trial court erred by permitting the state in its direct evidence "to improperly bolster the credibility of its witnesses," and (5) there was instructional error. We affirm.

Viewed in the light most favorable to the state, the evidence was as follows. On December 2, 1986, Lance Nichols, a detective with the Joplin Police Department, was engaged in an undercover operation designed to uncover illegal drug sales in the Jasper County area. That evening, at approximately 11:30 to 12:00 p.m., Nichols, acting on a tip from an informant, arranged to meet Vik at a Joplin city park for the purpose of purchasing a fourth ounce of marijuana from Vik for a price of $40. Nichols met Vik at the prearranged location, paid him $40, and received from Vik a bag containing what Nichols believed to be a fourth ounce of marijuana. After Nichols left the park, he went to the police station where Nichols performed what he referred to as a field test on a small portion of the material from the bag.

At trial, his testimony on this issue was, "I took a small portion of it and placed it in a Field Test Kit which we have that contains little ampules and the Field Test Kit was positive." Vik's attorney objected, evidently on the ground that Nichols had not been qualified as an expert to give such an opinion. The objection was sustained and the jury was instructed to disregard the statement that the test of the substance was positive. Vik's attorney also requested a mistrial, which request was denied. Nichols further testified that he placed the bag containing the remainder of the marijuana in a container bag, placed a property record slip on the bag reading "11–2–86" and placed the bag in Locker No. 6 in the evidence locker room. Nichols, over objection by Vik's attorney, testified that he had inadvertently placed the date of 11–2–86 instead of 12–2–86 on the tag "actually, like placing '87 on a check rather than '88, [is] basically what I did." He testified that the bag containing the evidence was placed in the locker on the evening of December 2, 1986.

Bob Nelson, the Evidence Officer for the Joplin Police Department, testified that he removed the bag from the evidence locker on December 3, 1986, and had it in his exclusive custody and control until December 5, when he took the exhibit to the Regional Crime Laboratory and gave it to a technician named Ralph Willis for the purpose of having the material in the bag examined. After Willis had examined the material and determined that it was marijuana, Nelson, on January 13, 1987, retrieved the evidence, and kept it under his exclusive control and custody until time of trial.

Over objection, Nelson was permitted to testify that he had mislabelled a report which showed the date and time the evidence was taken out of the locker by him so that the report showed a date of December 1, 1986 as the date when he received the evidence, rather than the true date of December 3, 1986. When asked to explain the mix-up, Nelson testified:

Q. (By Mr. Rouse:) I asked you if the date, December 1st, 1986, was correct?

A. No, sir.

Q. What should have been the date that you placed there?

A. My date on there should be 12–3–86.

Q. How was it that you placed 12–1–86?

A. When I take my evidence upstairs to the Evidence Room, I have a table there that I set everything on and I log it in and I have a tear-off calendar that I look at to obtain a date and at this particular time, inadvertently, the date hadn't been torn off. I looked at the calendar and I just saw 12–1–86 and wrote that on the tag.

Q. Just hadn't pulled the pages on the calendar?

A. I hadn't flipped the page.

Q. Okay. I am going to hand you what's been marked State's Exhibit 2 and ask if you could identify that document?

A. It is a copy of the Regional Crime Lab's report.

Q. Okay. Now, is that a form that you have partially filled out?

A. Yes, sir.

Q. And can you tell the jury what portion of that document you filled out?

A. I filled out the top portion down to where it says, 'For Laboratory Use Only.' Signed it at the bottom.

Q. And on that document, you had the date the evidence was obtained, 11–2–86, where had you derived that information?

A. I just copied that part off of what's on the tag.

Q. You just copied what's been previously marked on the tag, is that correct?

A. Yes, sir.

Q. And who did you—strike that question. At any time, did you take State's Exhibit 3 to the Regional Crime Lab?

A. Yes, sir.

Q. And on what date did you take it to the Regional Crime Lab?

A. 12–5–86.

Q. And was it in your exclusive custody and control from 12–3–86 to 12–5–86?

A. Yes, sir.

 Points relied on one and two in Vik's brief are related. They assert that the inconsistencies between the testimony of Nichols and Nelson relative to the dates when the bag of marijuana came into their possession, and the dates placed on evidence tags and police reports stating when they had received the material, were of such magnitude that the inconsistencies "cannot under any type of logical analysis be harmonized," which resulted in the state's case being "so flawed with inconsistencies as to deprive it of substance and sufficiency to convict." Based on such conclusion, Vik argues that there was not sufficient evidence to sustain a conviction, and also that the state failed to establish a proper foundation for the admission into evidence of the bag of marijuana "in that the identifying dates on the exhibit indicating when it was obtained were before the alleged sale occurred." These arguments are without merit.

Nichols testified on direct examination that he purchased a fourth ounce of what he believed to be marijuana from Vik on December 2, 1986. That testimony alone, when coupled with the testimony of Officer Nelson establishing the chain of custody, and that of expert witness Willis that the substance he received from Nelson was marijuana, was sufficient to sustain the conviction. While there was a conflict between the trial testimony of Nichols and Nelson as to when they took possession of the bag of marijuana, and the dates shown on the evidence tag and police reports as to when those events took place, the jury was entitled to hear, and accept if they chose, the two police officers' explanation as to

how the mistakes occurred. It is evident from the verdict that the jury believed their direct testimony, and that they accepted their explanation of the inconsistencies. They had a right to do so.

Since Vik's fourth point relied on is related to points one and two, we address it at this time. In that point Vik contends that the trial court erred in allowing Nichols and Nelson to explain the inconsistencies heretofore mentioned as a part of their direct testimony because such testimony was an improper attempt by the state to bolster the credibility of its witnesses before any impeachment testimony was introduced by the defendant.

The trial court has broad discretion in the introduction of evidence on direct as well as cross-examination. *White v. American Postal Wkrs. U., St. Louis,* 579 S.W.2d 671, 675 (Mo.App.1979). The exercise of such discretion will not be disturbed on appeal absent a clear showing of abuse. *Iota Management v. Boulevard Inv. Co.,* 731 S.W.2d 399, 412 (Mo.App.1987). No such showing has been made here. Where an attorney recognizes a possible basis for impeachment of his witness, he is entitled to have that witness explain or state the facts regarding that basis, instead of having to stand by until the impeachment material is dramatically revealed by his adversary. Such trial strategy is common-place in criminal cases, examples of which are defense counsel exposing on direct examination his witness' past criminal convictions before the prosecutor has a chance to do so, or prosecutor's exposing on direct examination the terms of his accomplice witness' plea bargain. *State v. Spinks,* 629 S.W.2d 499, 503 (Mo.App.1981). In addition, the law encourages the voluntary correction by a witness of erroneous statements he previously made. *State v. Couch,* 567 S.W.2d 360, 362 (Mo.App.1978). The point has no merit.

Returning to his third point relied on, Vik asserts that the trial court committed error by failing to declare a mistrial following Nichols' testimony that he conducted a field test on the substance in the bag he obtained from Vik, and that the results were "positive."

As previously stated, the trial court sustained an objection to such testimony and ordered it stricken, evidently on the ground that Nichols had not been qualified as an expert to give such testimony. A decision on whether to declare a mistrial lies within the sound discretion of the trial court which discretion will not be disturbed on appeal unless prejudice to the defendant by the remark in question cannot be removed in any other way. *State v. Davis,* 653 S.W.2d 167, 176 (Mo. banc 1983). No such prejudice has been shown here. Expert witness Willis testified without equivocation that the substance in question was marijuana. Vik's lawyer does not dispute the fact that Willis' examination of the substance in question revealed it to be marijuana. Since Willis' testimony was a sufficient basis for the jury's determination that the substance purchased from Vik was marijuana, the testimony of Nichols, which was ordered stricken, added nothing of value to the unquestioned opinion of Willis on the subject. The trial court, by sustaining defense counsel's objection to the testimony of Nichols that the test was "positive" and by ordering the jury to disregard the statement, adequately handled the problem. The trial court's refusal to declare a mistrial was not an abuse of discretion.

In his remaining point relied on, Vik complains of the action of the trial court in giving instruction No. 5, which read as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 2, 1986, in the County of Jasper, State of Missouri, the defendant sold marijuana to Lance Nichols, and

Second, that defendant knew that he sold it, and

Third, that defendant was aware of the nature and character of the substance,

then you will find the defendant guilty of selling marihuana.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Vik objects to the term "on or about December 2, 1986," as used in the instruction, contending the net effect of such phrase nullified the effect of his motions for a bill of particulars concerning the time and date of the offense, to which the state responded that the offense occurred at approximately 11:55 p.m. on December 2, 1986.

The instruction limits the time at which the offense was alleged to have occurred to "on or about December 2, 1986." This time limitation was made more specific by the state's answer to the bill of particulars which declared the offense occurred at approximately 11:55 p.m. on December 2, 1986. The state's proof, through the testimony of Nichols, supported the assertion made in the answer to the bill of particulars.

There is nothing in the record that even suggests that Vik was misled, or hindered in any way in the preparation of his defense, by the lack of specificity in the instruction as to the time and date of the alleged defense. While it is true that in cases where an alibi defense is raised, the verdict directing instruction must contain a specific time and date phrase alleging when the offense was supposedly committed, so that an impossible burden is not placed on a defendant who is trying to account for his whereabouts over a period of time, *State v. Sager,* 600 S.W.2d 541, 574 (Mo. App.1980), cert. denied, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981), such a defense was not raised here. In fact, Vik denied selling marijuana to Nichols at any time. Under the facts of this case, the words in the instruction "on or about December 2, 1986" were sufficient. *See State v. Siems,* 535 S.W.2d 261, 265-66 (Mo.App. 1976). The point has no merit.

We find no error in any action or ruling of the trial court. Judgment affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.